IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TGI FRIDAY'S INC., | § | |
| | § | |
|     Plaintiff- | § | |
|     counterdefendant, | § | |
| | § | Civil Action No. 3:09-CV-0083-D |
| VS. | § | |
| | § | |
| GREAT NORTHWEST RESTAURANTS, | § | |
| INC., et al., | § | |
| | § | |
|     Defendants- | § | |
|     counterplaintiffs. | § | |

MEMORANDUM OPINION
AND ORDER

Defendants-counterplaintiffs, former franchisees of plaintiff-counterdefendant TGI Friday's Inc. ("TGIF"), move to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for improper venue under Rule 12(b)(3). They also move under 28 U.S.C. § 1404(a) to transfer this case to the Eastern District of California, or, alternatively, to a district court in Washington or Oregon.[1] For the reasons that follow, the court denies the motions.

---

[1]Defendants filed their motion to dismiss on January 20, 2009 and filed their motion for change of venue on February 19, 2009. In a series of orders beginning on January 22, 2009 and ending on April 16, 2009, the court granted the parties' joint requests that the court extend the deadlines for TGIF to respond to the motions. TGIF responded to defendants' motion for change of venue on May 5, 2009 and to their motion to dismiss on May 7, 2009. Under N.D. Tex. R. 7.1(f), defendants' reply briefs, if they wished to file them, were due May 20, 2009 and May 22, 2009, respectively. They did not file reply briefs, and the motions are now ripe for determination.

I

This case involves 11 restaurants located in California, Oregon, and Washington that have been operated as TGI Friday's locations pursuant to franchise agreements between TGIF and defendants. Although TGIF alleges that it properly terminated all of these franchise agreements on December 18, 2008, defendants continue to operate all but one of these restaurants as TGI Friday's locations and to use TGIF's trademarks and service marks.[2] TGIF sues defendants, seeking to enjoin them from continuing to use its marks,[3] and asserting claims for Lanham Act violations, *see* 15 U.S.C. § 1051 *et seq.*, and for common law trademark infringement and unfair competition.

TGIF, a New York corporation with its principal place of business in Carrollton, Texas, which is located in the Northern District of Texas, operates and franchises TGI Friday's restaurants throughout the United States. Between 1997 and 2006, TGIF entered into 11 separate franchise agreements with defendants. It entered into agreements with defendant Great Northwest Restaurants, Inc. ("Great Northwest") to operate four franchise locations in Washington and one in Oregon. Great Northwest is a Washington corporation with its principal place of business in California.

_____

[2]Defendants recently closed one of the California locations, leaving only ten of the restaurants in active operation.

[3]The court is deciding TGIF's preliminary injunction application by separate memorandum opinion and order filed today.

TGIF entered into a franchise agreement with defendant PRC Restaurants, Inc. ("PRC") to operate a franchise location in Washington.  PRC is a Washington corporation with its principal place of business in California.  TGIF also entered into franchise agreements with Capital City Restaurants, Inc. ("CCR") to operate five franchise locations in California.  Defendant Mike Alizadeh ("Mike") was the President and principal of Great Northwest, PRC, and CCR, and he guarantied the performance of all three corporations under the franchise agreements.  Mike is a resident of California.

In 2007 the five CCR franchise agreements were assumed by corporations for which defendant Abe Alizadeh ("Abe") served as President and principal.  Defendant TGIA Restaurants, Inc. ("TGIA") assumed three of CCR's franchise agreements, and defendant Ten Forward Dining, Inc. ("Ten Forward") assumed the other two.  Both Ten Forward and TGIA are California corporations with principal places of business in California.  Abe is also a California resident.

Each franchise agreement contains an identical or nearly identical provision, in capital letters and bold font, addressing choice of law, jurisdiction, and venue:

25.  Choice of Law; Jurisdiction; Venue

25.01 Franchisee and its principals acknowledge that [TGIF] may grant numerous franchises throughout the United States on terms and conditions similar in certain material respects to those set forth in this agreement, and that it is of mutual benefit to franchisee and its principals and to [TGIF] that these terms and conditions be uniformly interpreted.  Therefore, the parties agree that Texas law (except for Texas choice of law rules) shall apply to all matters arising under or relating to this agreement, including the interpretation and construction of this agreement and shall govern all questions which arise with reference to this agreement or the relationship of [TGIF] to franchisee and its principals.

25.02 The parties acknowledge that this agreement shall be performed in substantial part in Dallas County, Texas.  The parties therefore agree that any claim, controversy or dispute arising out of or relating to this agreement or the performance thereof which cannot be amicably settled, except as otherwise provided herein, shall be resolved by a proceeding in a court in Dallas County, Texas, and franchisee and principals each irrevocably accept and submit to the jurisdiction of the courts of the State of Texas and the federal courts located in Dallas County, Texas for such claims, controversies or disputes; provided, however, with respect to any action which includes injunctive relief, or any action for the recovery of any property, real or personal, [TGIF] may bring such action in any state which has jurisdiction.

*E.g.*, P. App. 357 (capital letters altered to upper and lower case; bold font omitted).[4]   Additionally, the assumption agreements

---

[4]When the court cites TGIF's appendix, it refers to the January 14, 2009 appendix in support of TGIF's complaint and

- 4 -

through which Ten Forward and TGIA assumed the franchise agreements entered into by CCR contained substantially similar provisions.

Under the franchise agreements, defendants were obligated to make monthly payments to TGIF for royalties, advertising, and other related fees.   TGIF asserts, and defendants concede, that defendants failed to make these monthly payments to TGIF.   TGIF maintains that, as a result of defendants' failure to make these payments and to cure their defaults, the franchise agreements were terminated on December 18, 2008.  Defendants contend that TGIF did not properly terminate the franchise agreements, and they admit that they continue to operate and hold out their restaurants as TGI Friday's locations.  TGIF seeks to enjoin defendants' continued use of its trademarks and service marks, and it asserts claims for Lanham Act violations and for common law trademark infringement and unfair competition.  Defendants ask the court to dismiss this case or, alternatively, to transfer it to the Eastern District of California or to a district court in Oregon or Washington.

II

Defendants first contend that the court lacks personal jurisdiction in this action, and they move for dismissal under Rule 12(b)(2).

---

application for temporary restraining order and preliminary injunction.

- 5 -

A

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). The determination whether a federal district court has personal jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See, e.g.*, *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because the Texas long arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over defendants would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.; Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due

> process, the defendant's conduct in connection
> with the forum state must be such that he
> "should reasonably anticipate being haled into
> court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted).   To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Berry v. Lee*, 428 F.Supp.2d 546, 557 (N.D. Tex. 2006) (Fitzwater, J.) (citations omitted).

A defendant's contacts with the forum may support either specific or general jurisdiction. *Mink*, 190 F.3d at 336. "For the court properly to assert specific personal jurisdiction, the defendant must have 'purposefully directed' his activities at residents of the forum, and the litigation must result from alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum." *Archer & White, Inc. v. Tishler*, 2003 WL 22456806, at *2 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'"  *Mink*, 190 F.3d at 336

(citations omitted).

When, as here, the court considers a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true all uncontroverted allegations in the complaint and resolve any factual conflicts in favor of the plaintiff. *Latshaw*, 167 F.3d at 211.  "Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction." *Id.*  "This liberal standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 WL 35615925, at *2 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996)), *aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam) (affirming, *inter alia*, this conclusion).

B

Defendants contend that they do not have sufficient "minimum contacts" with Texas to confer specific personal jurisdiction on this court.  They argue that merely entering into franchise agreements with a corporation that happens to reside in Texas does not establish minimum contacts.  As defendants correctly state, the Supreme Court held in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985), that entering into a contract with a party does not automatically establish sufficient minimum contacts with that

- 8 -

party's home state.   The Court also held, however, that a court should look at the circumstances surrounding the contract, and that "[i]t is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479.   The Court concluded, in circumstances similar to those present in this case, that the out-of-state franchisee had established minimum contacts with the franchisor's home state through their course of dealing. *Id.* at 479-82.  Defendants in the present case have even more substantial contacts with Texas than did the franchisees with the forum state in *Burger King*.

TGIF has adduced evidence not only of an extensive course of dealing with defendants, but of extensive contacts between the defendants and Texas.  First, defendants entered into 11 franchise agreements with TGIF, all of which contemplated a 20-year franchise relationship between the parties.  TGIF has also shown, *inter alia*, that (1) prior to becoming franchisees, Mike and Abe engaged in extensive negotiations at TGIF's headquarters in Texas, by telephone, and by email;[5] (2) Mike and Abe traveled to TGIF's headquarters in Texas to discuss the assumption of CCR's franchise

---

[5]At all relevant times, Mike and Abe were representing their respective corporate defendants.

agreements by Abe; (3) Mike and Abe traveled to TGIF's headquarters in Texas to negotiate and attempt to avoid the termination of their franchise agreements in 2008; (4) Mike and Abe traveled to TGIF's headquarters in Texas at least annually to meet with TGIF corporate representatives; (5) all of the corporate defendants sent representatives to training at TGIF headquarters in Texas on an annual basis; (6) Mike and Abe sent the franchise agreements and assumption agreements to Texas; (7) defendants regularly sent the required franchise payments to TGIF's headquarters in Texas; and (8) defendants received information technology support, marketing and advertising support, and accounting support from TGIF representatives located at its headquarters in Texas. Defendants have not contested any of this evidence. Additionally, each franchise agreement provides that it shall be substantially performed in Dallas County, Texas, that Texas law applies to all matters relating to the agreement, and that Texas is the forum for any disputes relating to the agreement. The agreements also explicitly provide that "franchisee and principals each irrevocably accept and submit to the jurisdiction of the courts of the State of Texas and the federal courts located in Dallas County, Texas" for disputes relating to the agreements. *E.g.*, P. App. 357.

In light of this evidence, the court concludes that defendants purposefully availed themselves of the privilege of conducting activities in Texas, and that defendants certainly should have

reasonably anticipated being haled into court in Texas. *See Latshaw*, 167 F.3d at 211. All of the defendants developed sufficient minimum contacts with Texas to confer specific personal jurisdiction on this court. Defendants do not argue that asserting jurisdiction over them would offend "traditional notions of fair play and substantial justice," and the court sees no reason that it would, thus it cannot grant defendants' motion to dismiss on this basis. *See, e.g., Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*, 2008 WL 794533, at *5 (N.D. Tex. Mar. 26, 2008) (Fitzwater, C.J.) (citing *Latshaw*, 167 F.3d at 211).

                              III

     Defendants next contend that this is an improper venue for this action, and seek dismissal under Rule 12(b)(3).

                               A

     Because TGIF asserts Lanham Act claims, this action is not founded solely on diversity jurisdiction, and 28 U.S.C. § 1391(b) controls where venue is proper. Once a defendant has objected to a plaintiff's chosen venue, as defendants have done, the burden shifts to the plaintiff to establish that venue is proper. *See Davis v. Billick*, 2002 WL 1398560, at *7 (N.D. Tex. June 26, 2002) (Fitzwater, J.).

     TGIF asserts that venue is proper in the Northern District of Texas based on § 1391(b)(2), which provides that a civil action may be brought in "a judicial district in which a substantial part of

                             - 11 -

the events or omissions giving rise to the claim occurred." TGIF relies on the forum selection clause contained in each of the 11 franchise agreements between defendants and TGIF. The forum selection clause, quoted in full above, provides, in relevant part, that the agreement shall be performed in substantial part in Dallas County and that the parties "agree that any claim, controversy or dispute arising out of or relating to this agreement or the performance thereof which cannot be amicably settled . . . shall be resolved by a proceeding in a court in Dallas County, Texas."[6] *E.g.*, P. App. 357.

In determining whether the forum selection clause applies in this case, the court first considers whether TGIF's claims fall within the scope of the clause, and it then turns to whether the clause is enforceable under the instant circumstances.[7] In determining whether the forum selection clause applies, the court

_____

[6]The forum selection clause also provides that the franchisee submits to the jurisdiction "of the courts of the State of Texas and the federal courts located in Dallas County, Texas." *E.g.*, P. App. 357. Thus the forum selection clause clearly provides that proper venue lies in both state *and* federal courts located in Dallas County. *Cf. Ondova Ltd. Co. v. Manila Indus., Inc.*, 513 F.Supp.2d 762, 773 (N.D. Tex. 2007) (Fitzwater, J.) (holding that forum selection clause establishing venue in any court "sitting in and for the County of Dallas" referred only to state courts).

[7]Because the forum selection clause provides for venue in this court, as opposed to another court to which a party is attempting to have the case transferred, the court need not decide whether the clause is mandatory or merely permissive. In other words, the issue is whether the clause *permits* venue in this court, not whether it *mandates* venue here.

will assume not only that "[f]ederal law governs the determination of whether an enforceable forum selection clause exists[,]" *Aerus LLC v. Pro Team, Inc.*, 2005 WL 1131093, at *1 (N.D. Tex. May 9, 2005) (Lynn, J.) (citing *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997)), but that federal law controls also whether TGIF's lawsuit falls within the scope of the forum selection clause, *see Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000).

B

1

"The court must examine the language of the contract to determine which causes of action are governed by the forum selection clause." *Aerus*, 2005 WL 1131093, at *7 (citing *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998); *Soil Bldg. Sys. v. CMI Terex Corp.*, 2004 WL 1283966, at *5 (N.D. Tex. June 9, 2004) (Fish, C.J.)).  "If the substance of the plaintiff's claims, stripped of their labels, does not fall within the scope of the forum selection clause, the clause cannot apply." *Id.* (citations, emphasis, and brackets omitted).

Here, the forum selection clause applies to disputes "arising out of or relating to [the franchise agreement] or the performance thereof." *E.g.*, P. App. 357.  Forum selection clauses covering claims "relating to" an agreement are broad in scope.  *See MaxEn Capital, LLC v. Sutherland*, 2009 WL 936895, at *6 (S.D. Tex. Apr. 3, 2009) ("Such clauses are broad, encompassing all claims that

- 13 -

have some possible relationship with the contract, including claims that may only 'relate to' the contract." (internal quotation marks, citation, and ellipsis omitted)); *Smith v. Lucent Techs., Inc.*, 2004 WL 515769, at *8 (E.D. La. Mar. 16, 2004). The court concludes that TGIF's claims fall within the broad scope of the franchise agreements' forum selection clause.[8]

### 2

TGIF asserts four claims against each defendant: Lanham Act infringement, Lanham Act false designation, common law trademark infringement, and common law unfair competition. For the purpose of determining whether the forum selection clause covers TGIF's claims, the four claims can be treated together. They all stand on the same predicate facts and turn on the same issues. The gravamen of each claim is that, because TGIF terminated the franchise agreements, defendants have been using TGIF's trademarks and service marks without authorization. Because defendants admit that they are using TGIF's trademarks and service marks, the critical question is whether they have authorization, and this issue depends on whether the franchise agreements were properly terminated.

Defendants contend that TGIF did not properly terminate the franchise agreements. They maintain, moreover, that even if the franchise agreements were properly terminated, defendants'

---

[8]Defendants do not dispute, or even address, whether TGIF's claims fall within the scope of the forum selection clause.

obligations upon termination, including those concerning cessation of use of TGIF's marks, are prescribed by the terms of the agreements.   Therefore, this dispute not only relates to the franchise agreements and their performance, but it requires interpretation and application of the agreements.   In a case involving a forum selection clause similar to the one at issue here, Judge Lynn applied the clause to claims for Lanham Act violations, common law trade dress infringement, and common law unfair competition, reasoning that resolution of the claims required interpretation of the applicable agreement. *See Aerus*, 2005 WL 1131093, at *8-*9 ("Because interpretation of the contract is necessary to determine whether such claim can stand, the forum selection clause applies to this claim.").   Because the court concludes that the forum selection clause applies to TGIF's claims, it now addresses whether the clause is enforceable.

C

When a party seeks dismissal of a case based on improper venue, a forum selection clause is presumed to be valid "and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Int'l Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114 (5th Cir. 1996) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). Enforcement may be unreasonable if it "would contravene a strong public policy of the forum state." *Haynsworth*, 121 F.3d at 963.

- 15 -

The party seeking to avoid enforcement of the clause bears a "heavy burden of proof." *Id.* (citing *M/S Bremen*, 407 U.S. at 17).

The only argument defendants make concerning the enforceability of the forum selection clause is that it is void under California law. Cal. Bus. & Prof. Code Ann. § 20040.5 (2008) provides: "A provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state." Defendants do not explain in any detail why this court should apply California law to void a franchise agreement that provides that Texas law applies to all matters relating to the agreement, and that Texas is the forum for any disputes relating to the agreement. Moreover, a choice of forum clause should not be enforced if it "would contravene a strong public policy of the forum *in which suit is brought.*" *M/S Bremen*, 407 U.S. at 15 (emphasis added). TGIF brought this suit in Texas, and defendants do not contend that enforcing the clause would contravene a strong public policy *of Texas*. Additionally, as noted, the parties agreed in the franchise agreements that Texas law applies to all matters relating to the agreements. Under these circumstances, California law simply does not come into play, and the question whether enforcement would contravene California policy

is not one that the court need consider.[9]

Defendants have not shown that enforcing the forum selection clause is unreasonable under the circumstances of this case. Therefore, the forum selection clause is enforceable and makes venue proper in this court. Defendants' motion to dismiss for improper venue is denied.

IV

Because the court is denying defendants' motion to dismiss, it will also consider their motion for change of venue. Defendants contend that, pursuant to 28 U.S.C. § 1404(a), the case should be transferred to the Eastern District of California, or, alternatively, to a district court in Washington or Oregon.

A

Section 1404(a) provides the analytical framework for deciding a motion to transfer, even when, as here, there is an enforceable forum selection clause. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988). This section provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other

---

[9]Moreover, it is not clear that § 20040.5 would in fact mandate the result for which defendants contend. The statute is relied on by California courts to void mandatory forum selection clauses that, if enforced, would require the California court to dismiss the suit or transfer it to another forum. Defendants have pointed to no cases, and the court has found none, in which a court sitting in another state has dismissed an action or transferred an action to California based on § 20040.5.

district or division where it might have been brought." 28 U.S.C.
§ 1404(a). "The decision to transfer is made to prevent waste of
time, energy, and money and to protect litigants, witnesses, and
the public against unnecessary inconvenience and expense." *Bank
One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 811 (N.D.
Tex. 2002) (Fitzwater, J.) (citing *Stabler v. N.Y. Times Co.*, 569
F. Supp. 1131, 1137 (S.D. Tex. 1983)). Nonetheless, the court may
not transfer a case where the result is merely to shift the
inconvenience of the venue from one party to the other. *Fowler v.
Broussard*, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001)
(Fitzwater, J.) (citing *Enserch Int'l Exploration, Inc. v. Attock
Oil Co.*, 656 F. Supp. 1162, 1167 n.15 (N.D. Tex. 1987) (Fitzwater,
J.)). "The burden rests on the [moving party] to prove by a
preponderance of the evidence that [the] choice of forum should be
disturbed and transfer is appropriate based on a balancing of
relevant factors." *Mannatech, Inc. v. K.Y.C., Inc.*, 2006 WL
2216033, at *2 (N.D. Tex. Aug. 3, 2006) (Solis, J.) (citations
omitted); *see also Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436
(5th Cir. 1989).

                                B

    The court first decides "whether the judicial district to
which transfer is sought would have been a district in which the
claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201,
203 (5th Cir. 2004) (per curiam). The court will assume *arguendo*

                              - 18 -

that the Eastern District of California would be a proper venue for this case.[10]

C

In determining whether it would be more convenient and just to transfer the litigation to California, the court is to consider "a number of private and public interest factors, none of which are given dispositive weight." *Id.* (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)).

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law.

*Id.* (citations and quotation marks omitted).

"Within this framework, a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995). "Although the parties' agreement as to the most proper

---

[10]Defendants move in the alternative to transfer the case to a district court in Oregon or Washington. Because the court's analysis is not materially different when these jurisdictions are considered, the court refers only to the Eastern District of California in its discussion.

forum should not receive dispositive weight, it is entitled to substantial consideration." *Id.* (citations omitted).   A forum selection clause will be "a significant factor that figures centrally in the district court's calculus." *Stewart Org.*, 487 U.S. at 29.   Thus, at the outset, the forum selection clause in this case tips the scales toward retaining the case in this court.

D

Turning to the private interest factors, the court first considers the relative accessibility of sources of proof. Documents pertaining to defendants' individual restaurant operations are presumably located in California, Oregon, and Washington.   TGIF's franchise documents and documents concerning their trademarks and service markers are maintained, however, at their corporate headquarters in this district.   The court cannot say that one forum is superior to another in this respect. Although the restaurants themselves are located in California, Oregon, and Washington, defendants have admitted that they are continuing to use TGIF's marks, and they have not cited any evidence that they plan to proffer in addition to general documents.   Accordingly, this factor is neutral.

The second and third factors consider the availability of compulsory process and the cost of attendance for willing witnesses.   "The convenience of the witnesses is often regarded as the most important factor to be considered in deciding whether to

transfer venue.  However, it is the convenience of the non-party witnesses that is accorded the greatest weight." *Sargent v. Sun Trust Bank, N.A.*, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (internal quotation marks omitted) (quoting *Minka Lighting, Inc. v. Trans Globe Imps., Inc.*, 2003 WL 21251684, at *2 (N.D. Tex. May 23, 2003) (Fish, C.J.)).  Defendants make the conclusory assertion that a California forum would be more convenient and less costly to willing witnesses, but they do not provide any evidence of this fact.  Both TGIF and defendants identify by affidavit a number of potential nonparty witnesses. Because TGIF's potential witnesses reside in North Texas, and defendants' potential witnesses reside in California, Washington, and Oregon, the court concludes that these factors are neutral.

The fourth factor examines all other practical issues associated with the choice of venue.  Defendants do not provide evidence of any other practical issues favoring transfer to California.  If anything, this factor favors maintaining the case in this forum, as the court is already familiar with the case, has decided several motions, and has issued a scheduling order. Maintaining the case in this forum is certainly the more expeditious route.

E

The court turns to the public interest factors. Neither party cites any administrative difficulties flowing from court congestion. The second factor concerns the interest in having localized interests decided at home. Defendants argue California has a great interest in this dispute because the restaurants and all of their employees are located in or near the California forum. They posit that the services provided and commerce generated by the restaurants is of significant interest to the California forum. This argument is nullified somewhat, however, by the fact that over half of the restaurants at issue are located hundreds of miles from the Eastern District of California and in other states. Also, TGIF contends that North Texas has a localized interest in the matter because its headquarters is located in North Texas and the franchise revenues are distributed through the local economy. Although this factor may weigh in favor of transfer, it does so only slightly.

The third public interest factor, the forum's familiarity with the governing law, weighs against transferring the case. The parties agreed in 11 separate franchise agreements that Texas law would govern any dispute relating to the agreements. This court regularly addresses matters of Texas law and is more familiar with Texas law than are courts in California.

The final public interest factor considers the avoidance of

unnecessary problems of conflict of laws.  Defendants assert that the California Franchise Relations Act and portions of the California Business and Professions Code apply to this dispute. Defendants do not explain, however, what specific laws apply, how they conflict with Texas law, or why this court would apply California law.  Accordingly, this factor does not favor transfer.

F

Considering all of the foregoing factors, including the forum selection clause agreed upon by the parties, the court holds that defendants have failed to establish that the case should be transferred to the Eastern District of California or to a district court in Oregon or Washington.  The court thus denies their motion for change of venue.

*   *   *

For the foregoing reasons, the court denies defendants' January 20, 2009 motion to dismiss and their February 19, 2009 motion for change of venue.

**SO ORDERED.**

August 20, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 23 -